**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN THE MATTER OF THE COMPLAINT                    CIVIL ACTION
OF WHITE TAIL OILFIELD SERVICES,
LLC, AS OWNER AND OPERATOR OF                     NO. 11-9 "C" (4)
M/V White Tail I, HER ENGINES,
TACKLE, APPURTENANCES,                            SECTION "C" (1)
FURNITURE, ETC., PRAYING FOR
EXONERATION FROM OR LIMITATION
OF LIABILITY

## ORDER AND REASONS[1]

Before the Court is a Motion for Summary Judgment filed by Superior Energy Services,

Inc. and Superior Energy Services, LLC ("Superior") and a Cross-Motion for Summary

Judgment filed by  White Tail Oilfield Services, LLC ("White Tail"). Rec. Doc. 64; Rec. Doc.

73. Having considered the memoranda of counsel, the record, and the applicable law, the Court

finds that Superior's Motion for Summary Judgment is DENIED and White Tail's Cross-Motion

for Summary Judgment is GRANTED for the following reasons.

## I. BACKGROUND

Superior seeks contractual defense and indemnity against White Tail regarding the

sinking of a spud barge, the M/V WHITETAIL I. Rec. Doc. 64-1 at 1. At the time the vessel

sank, Superior was providing services to Yuma Companies, Inc. ("Yuma") pursuant to a

contractual agreement. Rec. Doc. 64-2 at 1. White Tail also had a Master Service Agreement

---

[1]Jason A. Danowsky, a second-year student at the University of Texas School of Law,
assisted in the preparation of this Order & Reasons.

("MSA") with Yuma. Rec. Doc. 64-2 at 24. Superior seeks relief from negligence claims made

against it relating to the sinking. Rec. Doc. 25 at 3; Rec. Doc. 27 at 3. Superior seeks this relief

under the terms in White Tail's MSA. Rec. Doc. 85-2 at 5-6. The following is the choice of law

provision in the MSA relevant to this motion:

> THIS AGREEMENT AND THE LEGAL RELATIONS AMONG THE
> PARTIES HERETO SHALL BE GOVERNED BY AND CONSTRUED UNDER
> INTERNAL LAWS OF THE STATE IN WHICH THE WORK IS
> PERFORMED, OR IF THE WORK IS PERFORMED IN FEDERAL
> OFFSHORE WATERS, BY THE GENERAL MARITIME LAW OF THE
> UNITED STATES.

Rec. Doc. 64-2 at 31.

> The following is the indemnity provision in the MSA relevant to this Motion:

> Contractor shall defend, protect, indemnify and hold harmless YUMA, its
> employees, subsidiaries, affiliated companies, joint venturers, partners,
> subcontractors, agents, invitees, and all of their respective officers, directors and
> employers (collectively, the "YUMA Group"), from and against any claim
> involving damage to or loss of any of the equipment or property of any of the
> Contractor Group (as hereinafter defined), or for personal injury or death of
> employees of the Contractor Group. . . and whether the loss or injury is caused in
> whole or in part by the negligence or fault of any indemnitee, or the condition of
> any vehicle, vessel, aircraft or equipment or by the defect in any equipment or
> property of any indemnitee.

Rec. Doc. 64-2 at 36. Superior alleges that it is a subcontractor, invitee, or both subcontractor

and invitee under the indemnity provision in the MSA. Rec. Doc. 64-1 at 8.

Most of the facts relevant to the individual work order are uncontested. The M/V

WHITETAIL I was to deliver equipment from Venice, Louisiana to a tank battery next to a well

owned by Yuma. Rec. Doc. 83-1 at 5-6. The equipment included, among other things, fuel tanks,

pumps, compressors, and generators. Rec. Doc. 83-1 at 9.

## II. SUMMARY JUDGMENT STANDARD

2

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1996). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on unsubstantiated assertions and conclusory allegations. *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994).

### III. CHOICE OF LAW

### A. Law

Whether Louisiana law or maritime law applies to the contractual interpretation, courts are to apply a plain-language interpretation when reading contracts. *Louisiana Land and Exploration Co. v. Offshore Tugs, Inc.*, 23 F.3d 967, 969 (5th Cir. 1994) (in maritime contracts, "[a] court is entitled to take words spoken so clearly in their ordinary and plain sense.");

LSA-C.C. Art. 2047 ("The words of a contract must be given their generally prevailing meaning.").

Further, whether the contract is governed by maritime law or Louisiana state law, the choice of law established by the contract will govern. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242  ("Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable."); LSA-C.C. Art. 3540 ("All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties").

### B. Analysis

"Federal offshore waters" are those "in the Outer Continental Shelf area" ("OCS"). *Gardes Directional Drilling v. U.S. Turnkey Exploration Inc.,* 815 F.Supp. 956 (W.D.La. 1993); *See also English v. Apache Corp.*, 2011 WL 3352011 (E.D.La. 2011) (differentiating between state waters and those on the OCS). The OCS refers to all submerged lands more than three geographical miles from the coast of each state. 43 U.S.C.A. §1331; 43 U.S.C.A. §1301. Conversely, the seaward boundary of a state extends to a line three geographical miles distant from its coast line. 43 U.S.C.A. § 1312.

The contract explicitly provides that it will be "governed by and construed under the internal laws of the state in which the work is performed" or by general maritime law "if the work is performed in federal offshore waters." Rec. Doc. 64-2 at 31.  White Tail asserts that no activities associated with M/V WHITETAIL I occurred on the OCS, or more than three geographical miles from the coast of Louisiana. Rec. Doc. 86 at 8. Despite having notice to rebut White Tail's assertion of the location of the activities, Superior at no point disputes this

assertion, but instead argues that "work not performed on land, but rather 'offshore,' should include any waters off the coast of any state." Rec. Doc. 85-2 at 13. This construction is inconsistent with a plain-language interpretation of the contract, as it ascribes no meaning to the word "federal." This Court construes this construction and lack of denial that the incident occurred within three miles of the coast of Louisiana as an admission that the incident occurred within three miles of the state of Louisiana.

## IV. LOUISIANA OILFIELD INDEMNITY ACT

### A. Law

Because Louisiana law applies, this Court must determine if the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") also applies. The LOAIA declares declare "null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee." LSA-R.S. 9:2780(A).

The LOAIA applies only if "the agreement (1) pertains to a well and (2) is related to exploration, development, production, or transportation of oil, gas, or water." *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 991 (5th Cir.1992). An agreement that "pertain[s] to a well" includes "the furnishing or rental of equipment, incidental transportation, and other goods and services furnished" in connection with the service or operation of a well. LSA-R.S. 9:2780(C)).

### IV. ANALYSIS

The LOAIA will render an indemnity agreement null and void only "where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee." LSA-R.S. 9:2780(A). The claims from which Superior seeks relief accuse Superior of negligence. Rec. Doc. 25 at 3; Rec. Doc. 27 at 3. Thus, the only claims for which Superior seeks indemnity against White Tail are those which the LOAIA renders null and void. If the agreement under which the work was done pertains to a well and relates to the exploration, development, production, or transportation of oil, gas, or water, the LOAIA will void the indemnity agreement.

In *Smith v. Enervest Operating, L.L.C.*, another district court held that the delivery of essential equipment to a tank battery pertained to a well and related to the exploration, development, production, or transportation of oil, gas, or water. *Smith v. Enervest Operating, L.L.C.*, 2005 WL 1630023, *5 (W.D.La 2005). In that case, the plaintiff was injured on a tank battery while offloading lube oil from a vessel onto the platform. *Id*. at *1. The court explicitly held that the platform on the tank battery pertained to a well because it was connected to that well. *Id*. at *5. The court held that the equipment delivered "related to" the exploration, development, production, or transportation of oil, gas, or water because it was "essential to the operation of a gas compression platform such as [a tank battery]." *Id*. at *5.

The facts in *Enervest* are analogous to those here. Here, as in *Enervest*, a delivery of equipment is being made to a tank battery "next to" a well. While the delivery here is not lube oil, it does include fuel tanks, pumps, compressors, and generators. While the purposes of these items were not enumerated in the record, they are certainly as "essential to the operation of a gas compression platform such as [a tank battery]" as lube oil is. Thus, this Court finds that the

6

activities of the M/V WHITETAIL I pertain to a well and relate to the exploration, development, production, or transportation of oil, gas, or water, voiding the indemnity agreement.

Superior argues that the MSA between Whitetail and Yuma and the oral instructions given to the crew members of M/V WHITETAIL I "clearly do not pertain to a well" because they instead "pertain to the furnishing of a vessel and the carriage and transportation of equipment and supplies over navigable waters." Rec. Doc. 85-2 at 15. This conclusory allegation is inconsistent with the facts in the record as well as the facts alleged by Superior elsewhere in its memoranda. In Superior's Memorandum in Support of Motion for Summary Judgment, Superior states, "White Tail's spud barge was loaded with Superior's equipment at the White Tail dock in Venice, Louisiana and transported to Yuma's well by the crewmembers/employees of White Tail." Rec. Doc. 64-1 at 3.Superior's Statement of Uncontested Material Facts states that "[t]he presence of Superior equipment aboard the M/V WHITETAIL I was in connection with the performance of services by Superior to a Yuma oil well." Rec. Doc. 64-3 at 2.

Superior also argues that the LOAIA does not apply to "wholly maritime contracts." Rec. Doc. 91 at 16, citing *Angelina Casualty Co. v. Exxon Corp., USA, Inc.*, 701 F.Supp. 556, 558 (E.D. La. 1988). While this may be true, Superior has not established that the MSA and oral instructions were "wholly maritime." In *Angelina*, the court stated only that one company furnished vessels and personnel to another for "oil activities." *Angelina Casualty Co. v. Exxon Corp., USA, Inc.*, 701 F.Supp. 556, 557."Oil activities" do not necessarily pertain to a well or relate to the exploration, development, production, or transportation of oil, gas, or water. Without further facts, *Angelina* is of moot analogical value. Superior has failed to provide

competent factual evidence or a legal argument that counters the analogous facts in *Enervest*.

Thus, the LOAIA applies to the contract.

## V. CONCLUSION

Accordingly,

IT IS ORDERED that Superior's Motion for Summary Judgment is DENIED. (Rec. Doc.

64).

IT IS ORDERED that White Tail's Cross-Motion for Summary Judgment is GRANTED.

(Rec. Doc. 73)

New Orleans, Louisiana, this 19th day of July, 2012.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**