UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF WHITE TAIL OILFIELD SERVICES, L.L.C., AS OWNER AND OPERATOR OF M/V WHITETAIL I, HER ENGINES, TACKLE, APPURTENANCES, FURNITURE, ETC., PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO: 11-0009<br><br>SECTION: "C" (4) |

**ORDER**

Before the Court is a **Motion to Compel Production of Social Media Discovery (R. Doc. 128)**, filed by Petitioner, White Tail Oilfield Services, LLC, ("White Tail") seeking an order from the court compelling Defendant/Claimant, Joshua Pellegrin, ("Pellegrin"), to produce information from his Facebook page. The motion is unopposed. The motion was heard by oral argument on Tuesday, October 9, 2012.

**I.    Background**

This suit involves White Tail's petition for exoneration of liability, specifically for damages which it anticipated that would be brought against it after the M/V Whitetail I sank. (R. Doc. 1, pp. 1, 4). Pellegrin's claim is for personal injuries arising in connection with the accident. (R. Doc. 8, pp. 5-8). The specific injuries Pellegrin alleges are immaterial to the disposition of the instant motion.

As to the instant motion, White Tail seeks an order from the court compelling Pellegrin to produce information from her Facebook page.

**II.    Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 34 provides that parties may request documents and electronically stored information, but requires that a party who requests such information "must describe with reasonable particularity each item or category of items to be inspected." Rule 34(a)(1)(A). Rule 37 permits a party to move the court to compel discovery "[o]n notice to other parties and all affected persons." Rule 37(a)(1). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.*

2

**III.     Analysis**

In support of its Motion, White Tail argues that it originally propounded an Interrogatory No. 3, which requested that Pellegin "provide the following information for every social or professional networking or blogger site you have used," and Interrogatory No. 5, which requested that Pellegrin "provide the following information for every bulletin board system (BBS), internet forum, message board, or other online messaging or posting system you have used." (R. Doc. 128-5, pp. 2-3). Both of these Interrogatories requested the following information:

a. Name and uniform resource locator (URL) address of the site;
b. The specific URL address of your account profile on the site;
c. Your account name and real names or psuedonyms you have used to identify yourself on the site;
d. Your user ID or logon and password used to access your account on the site;
e. The dates that you used the site;
f. The email address(es) used by you in registering for the site;
g. Your account Used ID number or Friend ID number, if applicable;
h. Any account identification other than that listed above.

(R. Doc. 128-5, pp. 2-3). White Tail also included in the instant motion a copy of a Request for Production No. 1 which it propounded upon Pellegrin, in which it stated "[f]or each Facebook account maintained by you, please produce your account data for the period of September 1, 2010, through present." *Id.* at 3. In that Request for Production, White Tail explained that this data could be accessed by Pellegrin by (1) logging onto a given Facebook account, (2) selecting "account settings" under the triangle-shaped tab on the top right corner of the homepage, (3) clicking on a link entitled "download a copy of your Facebook data," and (4) following the directions on the data download page. (R. Doc. 128-5, p. 3).

White Tail argues that although Pellegrin originally objected to these requests, Pellegin withdrew his objections once White Tail filed a Motion to Compel on May 22, 2012. (R. Docs. 75, 128). Pellegrin agreed to produce all information from his Facebook page by September 1, 2012. (R.

Doc. 128-1, p. 2). However, White Tail argues that Pellegrin has not yet provided the information. According to White Tail, Pellegrin's explanation for his failure to provide the data is that he does not know how to use the "download a copy of your Facebook data" function. (R. Doc. 128, p. 2).

White Tail argued that it then sent a subpoena to Facebook, which included a sworn authorization by Pellegrin that he was unable to download his information. (R. Doc. 128, p. 2). White Tail argues that Facebook did not accept Pellegrin's explanation, but stated that because Pellegrin was responsible for creating the content himself, only he could download it. (R. Docs. 128, p. 2; 128-1, p. 3). Facebook agreed to contact him directly to resolve the downloading issue. (R. Doc. 128, p. 2). However, White Tail argues that communications from Facebook's counsel to Pellegrin's counsel went unreturned. *Id.*

White Tail further argues that in a September 24, 2012 discovery conference, Pellegrin's counsel offered to have his paralegal contact Facebook's counsel to learn how to download the information. *Id.* White Tail further argues that many courts have required litigants to either download and produce third-party information, or consent to disclosure, as the information is within the user's control. (R. Doc. 128-1, p. 5). White Tail argues that Pellegrin has given no reason why he cannot download and share the information, or else contact experts at Facebook to reconcile any downloading issues. *Id.* at 6.

At oral argument, counsel for White Tail reiterated his positions, and also stated that White Tail was willing to pay an Information Technology specialist to walk Pellegrin through the process of downloading his information from Facebook. White Tail also argued that despite the fact that it had Pellegrin's password for the Facebook account, it could not obtain the information because simply printing screens from Pellegrin's Facebook page would not capture deleted data, and while using Facebook's "download your information" feature would capture deleted material, this information

4

would be emailed only to Pellegrin.

Counsel for Pellegrin indicated that the delay was attributable to an issue with downloading Google Chrome, which Facebook's counsel had advised Pellegrin as being the optimal program for downloading information. According to Pellegrin's counsel, downloading Google Chrome caused his paralegal's computer to malfunction, which has in turn prevented Pellegrin's counsel from effectively downloading the data.

The Court ordered counsel for Pellegrin to produce the information within seven (7) days of the issuance of this Order. The Court noted that, because Pellegrin and his computer were located in Houma, and because White Tail already had Pellegrin's Facebook password, White Tail could itself access the "download your information" button and have a copy of the requested Facebook data emailed to Pellegrin. Pellegrin would then be obligated to forward all of the Facebook data he received in the email to White Tail's counsel.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Petitioner, White Tail Oilfield Services, LLC's, ("White Tail") **Motion to Compel Production of Social Media Discovery (R. Doc. 128)** is **GRANTED**. Defendant/Claimant, Joshua Pellegrin, ("Pellegrin") is to produce the information requested in White Tail's Motion **within seven (7) days** of the issuance of this Order and as instructed herein.

New Orleans, Louisiana, this 11th day of October 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**